UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No:  CR 11-00523-YGR |
| Plaintiff, | **ORDER DENYING MOTION FOR BAIL PENDING APPEAL AND STAY OF FORFEITURE; AND GRANTING IN PART MOTION TO EXTEND SURRENDER DATE** |
| vs. | |
| HUGH LESLIE BARAS, | |
| Defendant. | Docket 212, 220 |

On July 31, 2014, the Court sentenced Hugh Leslie Baras ("Defendant") to a term of 30 months in custody after a jury found him guilty of one count of Theft of Government Property in violation of 18 U.S.C. § 64, and five counts of Tax Evasion in violation of 26 U.S.C. § 7201.  The parties are presently before the Court on Defendant's Motion for Bail Pending Appeal and Stay of Forfeiture.  The United States of America ("Government") opposes the motion.  Also before the Court is Defendant's Motion to Extend Surrender Date.  The Government has not filed a response to this motion.  However, defense counsel represents that the Government objects to an extension of the surrender date.  Having read and considered the papers filed in connection with these matters, the Court hereby DENIES Defendant's Motion for Bail Pending Appeal and Stay of Forfeiture, and GRANTS IN PART Defendant's Motion to Extend Surrender Date, for the reasons stated below.

I.     **BACKGROUND**

The following facts are taken from the Amended Presentence Investigation Report and are consistent with the evidence presented to the jury.  Because neither party objected to the facts in the report, the Court finds them to be undisputed.

In 2001, Defendant was employed as a staff psychologist at Kaiser Permanente ("Kaiser") in Oakland. In January of 2001, he sustained a serious foot injury and took medical leave from his employment with Kaiser. Defendant's foot injury did not heal properly and he was subsequently diagnosed with Polymyalgia Rheumatica ("PMR"), which is a common cause of widespread aching and stiffness in older adults. Defendant was treated with steroids (primarily prednisone), narcotic pain killers, and marinol. His doctors also prescribed him anti-depressants and stimulant medications to keep him awake. Defendant attempted to return to work at Kaiser, but the pain and weakness from the PMR prevented him from performing certain aspects of his duties. As a consequence, he agreed to take a medical discharge.

On June 27, 2002, Defendant submitted an application for Disability Insurance Benefits to the Social Security Administration ("SSA"), claiming to be completely disabled and unable to work. An SSA medical and psychological evaluation confirmed the PMR disability and noted some negative effects from the medication Defendant was taking, including depression and effects on Defendant's intellectual functioning. Defendant was notified at several points in the application process that he was obligated to inform the SSA if he began working again "whether as an employee or a self-employed person." In October 2002, Defendant began receiving disability insurance payments. In 2003, he resigned from his position at Kaiser.

For many years, Defendant had a small private psychotherapy practice in Palo Alto, California, where he provided clinical psychotherapy services to clients. He primarily received patient referrals from other doctors for treatment of physical symptoms related to anxiety. After resigning from Kaiser, Defendant's private practice began to grow. From 2005 to 2009, he received payments of $1,099,541 for services rendered. However, he did not report this income on his federal tax returns during these years. Instead, he only reported the income he received from his disability benefits.

Between 2005 and 2009, Defendant cashed over 4,500 checks against his personal Citibank money market account. He visited the bank often, every few days, and cashed

multiple checks at a time.  Defendant always cashed checks in an amount less than $10,000, thereby avoiding the triggering of a Cash Transaction Report to the Internal Revenue Service ("IRS").  In addition, he only provided his tax preparer with receipts relating to his disability benefits and all other reports of income that he received for interest, dividends and capital gains.  From 2005 to 2009, Defendant did not provide his tax preparer with any receipts related to his income from his private psychotherapy practice.

When Defendant was confronted by IRS agents with the fact that he had not filed a Schedule C for his business income since 2003, and was shown a spreadsheet detailing 4,500 client checks that he failed to report on his tax returns, he stated that he did not know his business was generating so much money.[1]  Defendant subsequently admitted to the IRS agents that he had failed to pay taxes on the income that was generated from his business. He told the agents, "I acknowledge that I haven't been paying my taxes….  I've never been a great accountant."

From 2006 to 2009, Defendant received $80,615.80 in SSA disability income to which he was not entitled because he was self-employed.  As for income taxes, Defendant concealed a total of $423,231 in federal income tax liability on his tax returns from 2005 to 2009.[2]  From August 18, 2011 to December 21, 2013, Defendant made payments (including interest) to the IRS, the SSA and the California State Franchise Tax Board in the amount of $844,806.42.

On February 3, 2014, a jury found Defendant guilty of one count of Theft of Government Property in violation of 18 U.S.C. § 64, and five counts of Tax Evasion in violation of 26 U.S.C. § 7201.  On July 31, 2014, the Court sentenced Defendant to 30 months in custody.  On August 6, 2014, the Court issued an Order of Forfeiture, ordering

---

[1] At trial, Defendant testified that he did not believe he was making any income from his private practice.

[2] From 2005 through 2009, Defendant failed to report his income from his private practice to the State of California.  Defendant concealed a total of $119,174 in state income tax liability.  In addition, Defendant failed to pay capital gains taxes on coin sales for the tax year 2008.

1  Defendant to forfeit $80,615.80 to the Government.  On August 19, 2014, Defendant filed

2  the instant motion, requesting bail pending appeal and a stay of the Court's forfeiture order.

3  **II.    LEGAL STANDARD**

4  The Bail Reform Act provides, subject to exceptions not relevant here, that

5  following conviction and sentencing a defendant who has filed an appeal *must* be detained,

6  unless the judicial officer finds:

7  (A) by clear and convincing evidence that the person is not likely to flee or pose a
   danger to the safety of any other person or the community if released under section
8  3142(b) or (c) of this title; *and*

9  (B) that the appeal is not for the purpose of delay and raises a substantial question of
   law or fact likely to result in--
10

11  (i) reversal,

12  (ii) an order for a new trial,

13  (iii) a sentence that does not include a term of imprisonment, or

   (iv) a reduced sentence to a term of imprisonment less than the total of the
14  time already served plus the expected duration of the appeal process.

15  18 U.S.C. § 3143(b)(1) (emphasis added).  When Congress enacted the Bail Reform Act, it

16  created a presumption of detention and shifted the burden of proof to the defendant to show

17  otherwise.  See United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985); United States

18  v. Montoya, 908 F.2d 450, 451 (9th Cir. 1990)

19  Findings related to whether a defendant is likely to flee, pose a danger to others, or

20  act for purposes of delay are fact-based issues.  See United States v. Khan, 2014 WL

21  2930656, at *2 (N.D. Cal. 2014).  To determine whether a "substantial question of law or

22  fact" exists which would result in one of the four enumerated items, the analysis is

23  different.  See id.  In Handy, the Ninth Circuit explained that, "the word 'substantial'

24  defines the level of merit required in the question raised on appeal, while the phrase "likely

25  to result in reversal" defines the type of question that must be presented."  Handy, 761 F.2d

26  at 1281.

27  The first part of the analysis requires the Court to determine whether the appeal

28  raises a "substantial" question of law or fact.  A question is substantial if it is "fairly

debatable or fairly doubtful." Montoya, 908 F.2d at 451 (citing Handy, 761 F.2d at 1283). "Fairly debatable or fairly doubtful" means the question "is one of more substance than would be necessary to a finding that it was not frivolous." Montoya, 908 F.2d at 451. Questions may be fairly debatable or fairly doubtful if they are novel questions, or questions that cannot be readily answered by controlling precedent. Handy, 761 F.2d at 1281; see also United States v. Miller, 753 F.2d 19, 22 (3d Cir. 1985) ("[A] court must determine that the question raised on appeal is a 'substantial' one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful.").

The second part of the analysis - whether the substantial question is likely to result in reversal, a new trial, a non-prison sentence, or a sentence reduced to less than the time that would be served by the end of the appeal process - concerns only the type of question that meets the requirement; it does not involve assessing the likelihood that a reversal will occur in the particular case. United States v. Garcia, 340 F.3d 1013, 1021 n. 5 (9th Cir. 2003) (citing Handy, 761 F.2d at 1280). "The defendant, in other words, need not, under Handy, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions." Garcia, 340 F.3d at 1021 n. 5; see Miller, 753 F.2d at 23 ("A court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.").

## III.   DISCUSSION

### A.   Bail Pending Appeal

Defendant contends that the Court must order bail pending appeal because the Government does not dispute that he is not a flight risk or a danger to the community, and because his appeal is not taken for purposes of delay and he has raised at least one substantial issue on appeal. According to Defendant, his appeal raises the following substantial questions of law and/or fact, whether: (1) the Court erred in excluding evidence

of Defendant's belated payment of taxes; (2) it was prejudicial misconduct for the Government to falsely suggest to the jury that Defendant had not changed back to his prior "good financial behavior" after being confronted by IRS agents and terminating the "bulk" of his medications; (3) the Court erred in ruling that the Government did not constructively amend the Superseding Indictment; (4) the Court erred in refusing to instruct the jury that Defendant's mental disorder could be considered as evidence raising a reasonable doubt as to whether he acted with the requisite criminal intent; and (5) the Court erred in failing to order a new trial based on juror misconduct.  In addition, Defendant argues that "the short sentence imposed is . . . grounds for granting bail on appeal."

### 1.    Risk of Flight or Danger to Any Person or the Community

The Court is required to detain Defendant pending appeal unless he proves by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if he is released.  See 18 U.S.C. § 3143(b)(1).  While Defendant asserts that the Government agrees that he is not a flight risk and does not pose a danger to any other person or the community, the Government does not explicitly concede this issue.  Although the Government's opposition is silent on this matter, it did concede as much on the record at the Court's last session.  Accordingly, Defendant has satisfied this prong of the analysis.

### 2.    Substantial Question of Law or Fact[3]

The focus of this motion is whether the appeal raises a substantial question of law and/or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.  See 18 U.S.C. § 3143(b).  Having reviewed the issues identified by Defendant in support of his

---

[3] Neither party adequately addresses the issue of delay.  Defendant simply asserts that his appeal is not taken for purposes of delay, while the Government's papers are silent on this issue.  However, because there is nothing in the record suggesting that Defendant filed an appeal for purposes of delay, there is no basis to deny Defendant's motion on this ground.

motion for bail pending appeal, the Court finds that Defendant has failed to sustain his burden to overcome the presumption in favor of detention pending appeal. Defendant has not raised a substantial question of law or fact. The Court addresses the issues identified by Defendant in turn.

First, Defendant argues that a substantial question exists as to whether the Court erred in excluding evidence of his belated tax payments. The Court disagrees. Controlling authority supports the Court's exclusion of such evidence. See United States v. Pang, 362 F.3d 1187, 1194 (9th Cir. 2004) ("The district court correctly ruled that evidence of belated tax payments, made while awaiting prosecution, is irrelevant. . . . Were the rule otherwise, tax evaders could avoid criminal prosecution simply by paying up after being caught.") (citing Sansone v. United States, 380 U.S. 343, 354 (1965) (subsequent intention to pay taxes is no defense to a past intention to evade taxes)); United States v. Ross, 626 F.2d 77, 81 (9th Cir. 1980) (same)). Accordingly, because the Court's ruling is not "fairly debatable" or "fairly doubtful," Defendant has not raised a substantial question of law or fact.

Second, Defendant argues that a substantial question exists as to whether it was "textbook" prosecutorial misconduct for the Government to imply falsely that he had not reverted back to his prior long-term history of normal, law-abiding, financially responsible behavior after being confronted by IRS agents and terminating the "bulk" of his medications. Specifically, Defendant contends that it was improper for the Government to ask him during cross-examination why his house remained in disrepair years after he ceased taking the medications that purportedly gave rise to his diminished capacity and inability to take care of his home. Defendant further contends that the Government "repeated this misconduct in argument" by telling the jury during closing argument that Defendant's failure to take care of his house was not due to the effects of his medications because Defendant's house was still a "disaster" in 2014. According to Defendant, the prosecutor's improper conduct left the jury with the false impression that his failure to repair his house during the relevant period (i.e., 2005 to 2010) was not the result of any

"medication-induced or depression-induced poverty."  This is because the prosecutor knew there was evidence that Defendant used most of his available funds to pay the amounts owed to the Government.  The Court finds that Defendant has not raised a substantial question of law or fact.  The Court agrees with the unremarkable position that a prosecutor cannot argue facts or inferences that are not supported by the evidence in the case or that the prosecutor knows are false or has very strong reason to doubt.  United States v. Blueford, 312 F.3d 962, 968 (9th Cir. 2002).  Defendant, however, has not shown that it is "fairly debatable" that prosecutorial misconduct occurred.  The Government did not argue facts or inferences that were not supported by the evidence in the record or that the Government knew to be false or had a strong reason to doubt.  The evidence presented at trial demonstrated that Defendant's house was in disrepair long after he ceased taking the medications prescribed for his PMR and his purported diminished capacity had resolved.  Defendant did not testify or otherwise present evidence showing that he was unable to clean-up or repair his house after he stopped taking the medications that purportedly gave rise to his diminished capacity.

Third, the issue of whether Count Five of the Superseding Indictment was constructively amended when the Government presented evidence regarding Defendant's failure to pay capital gains taxes on coin sales for the 2008 tax year similarly fails to meet the standard.[4]  A constructive amendment occurs when the crime charged is substantially changed at trial, so that it is impossible to know whether the grand jury would have indicted for the crime actually proved.  United States v. Pisello, 877 F.2d 762, 765 (9th Cir. 1989).  However, a mere variance occurs when the prosecution evidence proves facts different from those alleged in the indictment.  Id.  "The line essentially is between the situation in which different evidence supports the charged crime and that in which the evidence supports a crime other than that charged.  Although the latter, an amendment, requires

_____

[4] The amount of capital gains taxes that Defendant failed to pay for the coin sales was not included as part of the total tax loss alleged in Count Five of the Superseding Indictment.

reversal, the former, a variance, does not warrant reversal unless it affects the substantial rights of the defendant."[5] Id.  The Court finds that Defendant has failed to raise a substantial question of law or fact.  The evidence proffered by the Government regarding coin sales does not support a crime other than tax evasion and thus does not constitute a constructive amendment.  The evidence does not alter the charging terms of Count Five of the Superseding Indictment because that count alleges that Defendant failed to pay a substantial amount of tax on a certain sum of taxable income for the 2008 tax year.  In a tax evasion case, the Government need only prove that the defendant attempted to evade a substantial amount of tax, but not the exact amount evaded.  See id. at 765-766.[6]

Defendant's fourth issue relates to whether the Court erred by refusing to instruct the jury that his mental disorder could be considered as evidence raising a reasonable doubt as to whether he acted with the requisite criminal intent.  According to Defendant, it is "fairly debatable" that the failure to instruct the jury with his proposed mental disorder instruction deprived him of his right to an instruction on his theory of the case.  The Court finds that Defendant has failed to raise a substantial question of law or fact.  Defendant failed to provide any authority or argument demonstrating that it is "fairly debatable" that the jury was improperly instructed on the element of intent.  As the moving party, it is his burden to do so.

Finally, Defendant argues that a substantial question exists as to whether the Court erred in denying his motion for new trial based on juror misconduct.  The Ninth Circuit's

---

[5] Defendant does not argue that the Government's evidence regarding coin sales constitutes a variance from the Superseding Indictment, let alone that he suffered any prejudice as a result of such a variance.

[6] The Court notes that the constructive amendment issue bears only on one of Defendant's five convictions for Tax Evasion and does not bear on his conviction for Theft of Government Property.  The Second, Third, Fifth, Seventh, Eighth, and Tenth Circuits have held that the likelihood that a substantial question, if resolved in a defendant's favor, would result in an enumerated outcome must extend to all the convictions for which imprisonment has been imposed.  See, e.g., United States v. Randell, 761 F.2d 122 (2d Cir. 1985); United States v. Miller, 753 F.2d 19 (3d Cir. 1985); United States v. Valera–Elizondo,761 F.2d 1020 (5th Cir. 1985); United States v. Bilanzich, 771 F.2d 292 (7th Cir. 1985); United States v. Powell, 761 F.2d 1227 (8th Cir. 1985); United States v. Affleck, 765 F.2d 944 (10th Cir. 1985).  The Ninth Circuit has not yet considered this issue.

"juror-misconduct precedents distinguish between introduction of extraneous evidence to the jury, and ex parte contacts with a juror that do not include the imparting of any information that might bear on the case."  United States v. Rosenthal, 454 F.3d 943, 949 (9th Cir. 2006) (citation and quotation marks omitted).  "Extraneous-evidence cases involve not only the introduction of evidence per se but the submission of extraneous information (e.g., a file or dictionary) to the jury.  Ex parte contacts, by contrast, generally do not pertain to any fact in controversy or any law applicable to the case."  Id. (citations omitted).  In an ex parte contacts case, the court must hold a fair hearing if it finds a reasonable possibility of prejudice.  Unless the ex parte contact is inherently coercive, the movant is not entitled to a new trial without demonstrating actual prejudice.  Id.

The Court finds that Defendant has failed to raise a substantial question of law or fact regarding the denial of his motion for a new trial based on juror misconduct.  In support of his contention that it is "fairly debatable" that the Court erred in concluding that this case does not involve the receipt of extraneous information, Defendant relies on Rosenthal.  Defendant's reliance is misplaced.  Rosenthal is readily distinguishable from the facts of this case.  There, a juror asked an attorney friend whether she had "any leeway" in following the court's instructions on the law and her friend advised her that she "could get into trouble if [she] tried to do something outside those instructions."  Rosenthal, 454 F.3d at 950.  The Ninth Circuit held that the juror received extraneous information from her attorney friend because the communication was tantamount to a substantive legal discussion regarding the law applicable to the case.  Id.  In concluding that a new trial was warranted, the Ninth Circuit found that the communication was an improper influence upon the juror's decision to acquit or convict because the juror could not fairly determine the outcome of case if she believed she would face "trouble" for a conclusion she reached.  See id. (noting that a juror who genuinely fears retribution might change his or her determination of the issue for fear of being punished, and that the threat of punishment works as coercive force on jury's independence).  Here, unlike in Rosenthal, the communications at issue constitute ex parte contacts.  The contacts in this case do not

1    pertain to any fact in controversy or any law applicable to the case.  The contacts involved a

2    juror's communications with a friend in which the juror attempted to obtain information

3    from the friend's attorney husband regarding the likely duration of the trial.[7]  The contacts

4    also involved a conversation between the juror and her attorney husband, during which the

5    husband advised her to "listen to both sides and make your decision at the end."  Contrary

6    to Defendant's contention, the juror did not receive extraneous information from her

7    attorney husband that is tantamount to a substantive legal discussion regarding the law

8    applicable to this case.  Nor did the juror receive any extraneous information from her

9    friend or her friend's attorney husband.

10    ### 3.    Length of Sentence Imposed

11         Defendant contends that the "short" sentence imposed is grounds for granting bail on

12    appeal.  More specifically, Defendant argues that because the total term of incarceration

13    imposed (i.e., 30 months) is less than the time that it will take to resolve his appeal, and

14    because reversal of the Court's guideline calculation could result in a shorter sentence, the

15    Court must grant bail on appeal under § 3143(b)(B)(iv).  Section 3143(b)(B)(iv) provides

16    that a judicial officer shall order that a person who has been found guilty of an offense and

17    sentenced to a term of imprisonment, and who has filed an appeal, be detained, unless the

18    judicial officer finds "a reduced sentence to a term of imprisonment less than the total of

19    the time already served plus the expected duration of the appeal process."  18 U.S.C. §

20    3143(b)(B)(iv).  According to Defendant, he has raised numerous issues that could reduce

21    his sentence, including the Court's holding regarding grouping of the charges, the

22    calculation of the amount of loss, and the Court's failure to grant any downward departure

23    for acceptance of responsibility, diminished capacity, physical impairment, aberrant

24    behavior or lack of sophistication.  The Court finds that Defendant has failed to raise a

25

26    _____
      [7] The juror contacted her friend to find out whether the friend's husband could tell
27    her whether the trial would last as long as the district court had estimated.  The husband, an
      Assistant United States Attorney in the Northern District of California, refused to
      communicate with the juror.  There is no evidence that the juror had any contact with the
28    husband during the trial.

1  substantial question of law or fact.  Defendant's conclusory argument falls far short of what

2  is required to overcome the presumption of detention pending appeal.  The cursory

3  argument proffered by Defendant is insufficient to demonstrate that bail pending appeal is

4  warranted.

5         **B.     Stay of Forfeiture Order**

6         On August 6, 2014, the Court issued an Order of Forfeiture, ordering Defendant to

7  forfeit $80,615.80 to the Government.  Defendant contends that a stay of the Court's

8  forfeiture order is warranted because there is a substantial question as to whether the

9  Government is entitled to the forfeited amount given that he has already paid full restitution

10  to the Government, including the forfeited amount.  Defendant further argues that a stay of

11  the forfeiture order is appropriate because he has posted $100,000 in cash with the Court as

12  a bond.

13         As an initial matter, Defendant has failed to cite any decisional authority

14  demonstrating that his request for a stay is appropriate.  Moreover, to the extent Defendant

15  contends that it is improper for the Court to order him to forfeit $80,615.80 to the

16  Government when he has already paid this amount to the Government in restitution, the

17  Court disagrees.  In <u>United States v. Davis</u>, 706 F.3d 1081 (9th Cir. 2013), the Ninth Circuit

18  addressed the issue of whether payment of both forfeiture and restitution to the government

19  created an impermissible double recovery.  The Ninth Circuit held that "[e]ven if the same

20  government entity will receive both forfeiture and restitution, there simply is no double

21  recovery.  The two payments represent different types of funds:  punitive and

22  compensatory.  They are different in nature, kind, and purpose.  Money levied as a punitive

23  fine does not 'double' the money intended to compensate a loss anymore than the addition

24  of apples to one's store doubles the orange stock.  Nor is the collection of forfeiture and

25  restitution based on the same crime an impermissible doubling insofar as a defendant is

26  concerned." <u>Id.</u> at 1084 (noting that there is no statutory provision authorizing an offset

27  solely because the government will receive both restitution and forfeiture); <u>see also</u> <u>United</u>

28  <u>States v. Carter</u>, 742 F.3d 440. 446 (9th Cir. 2014).

**C.      Motion to Extend Surrender Date**

After sentencing Defendant to a term of 30 months in custody, the Court ordered Defendant to self-surrender on September 29, 2014.  On September 17, 2014, Defendant filed a motion requesting an extension of his self-surrender date, arguing that "good cause exists to extend the date of surrender for 30 days after the Court rules upon the motion for bail on appeal."  Having reviewed Defendant's motion, the Court finds that good cause exists to extend Defendant's self-surrender date from September 29, 2014 to October 14, 2014.  Accordingly, Defendant's Motion to Extend Surrender Date is GRANTED IN PART.

**IV.      CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendant's Motion for Bail Pending Appeal and Stay of Forfeiture is DENIED.

2.      Defendant's Motion to Extend Surrender Date is GRANTED IN PART. Defendant shall self-surrender on October 14, 2014.

3.      This Order terminates Docket 212 and Docket 220.

IT IS SO ORDERED.

Dated:  September 18, 2014

YVONNE GONZALEZ ROGERS
United States District Judge